IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

Nos. 09-73160, 09-73201, 09-73225, 09-73228, 09-73230, 09-73247, 09-73249, 09-73251, 09-73252, 09-73254, 09-73264, 09-73269, 09-73271, 09-73274, 09-73281

---

AVISTA CORPORATION, *et al.*,

Petitioners,

v.

BONNEVILLE POWER
ADMINISTRATION; *et al.*,

Respondents.

---

**PF CUSTOMERS' MOTIONS
TO SEVER CERTAIN ISSUES AND FOR
SUMMARY DISPOSITION**

**(Filed by Public Power Council,
Pacific Northwest Generating Cooperative and Members,
and Northwest Requirements Utilities)**

---

## **TABLE OF CONTENTS**

Corporate Disclosure Statements ............................................................. iii

Motions .......................................................................................................1

Background ................................................................................................2

Argument....................................................................................................6

I.      The Issue of the Lawfulness of BPA's Treatment of DSI Subsidy Costs
        in its WP-07 Rates Was Preserved for Judicial Review..................................7

II.     This Court Found That BPA's Subsidies to the DSIs Were Unlawful .........13

III.     Summary Disposition is Appropriate ...........................................................15

        A.      The Court Has Answered the Questions That Are Dispositive on This
                Issue ..........................................................................................15

        B.      The Court Should Instruct BPA to Calculate and Refund to Its PF
                Customers All Costs of the Unlawful Subsidies Indentified in
                *PNGC I* and Collected in the PF Rates ...............................................17

Conclusion .............................................................................................20

Certificate of Service

Exhibit 1—Slice Product Costing and True-Up Table for FY 2009

Exhibit 2—Federal Register Notice for WP-07 Rate Case (FR Notice)

Exhibit 3—WP-07 Final Record of Decision (WP-07 ROD)

Exhibit 4—Federal Register Notice for WP-07 Supplemental Rate Case (Supp FR
        Notice)

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page i

Exhibit 5—Hearing Officer Order in WP-07S

Exhibit 6—PNGC Offer of Proof in WP-07S

Exhibit 7—WP-07S Final Record of Decision (WP-07S ROD)

## CORPORATE DISCLOSURE STATEMENTS

Pursuant to Fed. R. App. P. 26.1, the moving parties state as follows:

1.    The Public Power Council (PPC) states that it is a non-profit corporation organized under the laws of the state of Washington.  PPC has no parent corporation and is not owned in whole or part by any publicly-held corporation.

2.    Petitioners Pacific Northwest Generating Cooperative (Oregon); Blachly-Lane County Cooperative Electric Association (Oregon); Central Electric Cooperative, Inc. (Oregon); Clearwater Power Company (Idaho); Consumers Power, Inc. (Oregon); Coos-Curry Electric Cooperative, Inc. (Oregon); Douglas Electric Cooperative (Oregon); Fall River Rural Electric Cooperative, Inc. (Idaho); Lane Electric Cooperative (Oregon); Lincoln Electric Cooperative, Inc. (Montana); Lost River Electric Cooperative, Inc. (Idaho); Northern Lights, Inc. (Idaho); Okanogan County Electric Cooperative, Inc. (Washington); Raft River Rural Electric Cooperative, Inc. (Idaho); Salmon River Electric Cooperative, Inc. (Idaho); Umatilla Electric Cooperative Association (Oregon); and, West Oregon Electric Cooperative, Inc. (Oregon) each states that it is a cooperative corporation organized under the law of the state indicated.  Each Petitioner also states that it

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page iii

has no parent corporation and no publicly owned corporation owns 10% or more of its stock.

3.      Northwest Requirements Utilities (NRU) states that it is a non-profit corporation organized under the laws of the state of Oregon to represent the interests of its fifty utility members.  NRU has no parent corporation and is not owned in whole or part by any publicly held corporation.

Dated this 2nd day of February, 2010.

s/ Mark R. Thompson
Mark R. Thompson
Public Power Council
825 NE Multnomah Street, Ste. 1225
Portland, Oregon 97232
Tel: 503.595.9779
Fax: 503.239.5959
E-mail: mthompson@ppcpdx.org
Attorney for Public Power Council

R. ERICK JOHNSON, P.C.

By: s/ R. Erick Johnson
R. Erick Johnson
5285 SW Meadows Rd, Ste 230
Lake Oswego, OR 97035
Ph: (503) 684.9658
Fax: (503) 968.6159
ejohnson@rejpc.com
Attorney for PNGC

SUSAN K. ACKERMAN

By: s/ Susan K. Ackerman
Susan K. Ackerman
621 SW Morrison, Ste 700
Portland, Oregon 97205
Ph: (503) 297-2392
Fax: (503) 242-9001
susan@ska-law.com
Attorney for NRU

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page iv

## MOTIONS

Pursuant to Fed. R. App. P. 27(a), Cir. R. 27-1, and Cir. R. 3-6, Petitioners Public Power Council (PPC) and Pacific Northwest Generating Cooperative and its Members (PNGC), and Intervenor Northwest Requirements Utilities (NRU) (collectively, "PF Customers") respectfully move the Court for orders (1) severing an issue for separate consideration in this case, and (2) granting summary disposition of the issue, pursuant to Cir. R. 3-6, with appropriate instructions to Respondent Bonneville Power Administration (BPA).

The issue with respect to which the PF Customers are seeking these orders is: whether it was lawful for BPA to charge the PF Customers through their rates the costs of unlawful subsidies BPA provided to certain Direct Service Industrial (DSI) customers. As explained below, the PF Customers protested BPA's inclusion in its rates of the costs of such subsidies at the time BPA included them in rates, and the PF Customers prevailed in this Court on their contention that the subsidies were unlawful. *See Pac. Northwest Generating Coop., et al. v. Bonneville Power Admin.*, 550 F.3d 846 (9th Cir. 2008), *amended on denial of reh'g*, 580 F.3d 792 (9th Cir. 2009) (hereinafter "*PNGC I*") (holding that BPA's subsidies to the DSIs were unlawful because they were based on an improper rate and violated BPA's statutory mandate to encourage the widest possible diversified

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 1

use of electric power at the lowest possible rates to consumers consistent with sound business principles).

The PF Customers respectfully ask the Court to grant the following relief: (1) review of their Petitions on this issue only (reserving all other issues for later determination)[1] and (2) a remand of this issue to BPA with direction to calculate and refund the amounts charged by BPA in the rates paid by the PF Customers for the costs of the subsidies to the DSIs found unlawful in *PNGC I*.

## **BACKGROUND**

BPA is a federal power marketing agency charged with marketing the power generated by hydroelectric dams operated by the U.S. Army Corps of Engineers and Bureau of Reclamation and certain other electric generation resources. BPA

---

[1] After issuance of the *PNGC I* decision, BPA entered into amended contracts with its aluminum smelter DSI customers, Alcoa and CFAC, to resume cash payments to subsidize those DSIs' power costs. The BPA-Alcoa amended contract was challenged and the cash payments were again found unlawful. *Pacific Northwest Generating Cooperative, et al. v. Bonneville Power Administration,* 580 F.3d 828 (9th Cir. 2009) (*PNGC II*). The BPA-CFAC amended contract contained substantially the same terms as the BPA-Alcoa amended contract, and was unlawful for the same reasons stated by the *PNGC II* Court. Petitions for rehearing in *PNGC II* are pending at the time these motions are filed. If the petitions are denied, and after judgment is entered, the PF Customers will file a second motion for summary disposition to address a refund of DSI subsidy costs found unlawful in *PNGC II* (for the balance of BPA's FY 2009, December 1, 2008 through September 30, 2009). Because *PNGC I* has been fully and finally resolved, the right of PF Customers to obtain a refund of the DSI subsidy costs found unlawful there (for the period October 1, 2006 through November 30, 2008) cannot be affected by any outcome on rehearing of *PNGC II*.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 2

incurs costs in the performance of this obligation and its other activities and recovers those costs in the rates it charges for its wholesale power and transmission service sales. Because BPA is a self-financed agency that receives no annual appropriations from Congress, *see* 16 U.S.C. § 838i, as a general proposition, the amounts that BPA receives from the sale of electric power and transmission service are its only source of revenue. *Aluminum Co. of Am. v. Bonneville Power Admin.*, 903 F.2d 585, 588 (9th Cir. 1989).

BPA conducts rate cases, in accordance with section 7(i) of the Northwest Power Act, to establish its rates for the sale of wholesale power. 16 U.S.C. § 839e(i). The PF Customers are statutory preference customers of BPA and purchase power from BPA under its "priority firm" rates (PF rates).

The petitioners in these fifteen consolidated cases seek review of various decisions made by BPA in its proceedings to establish rates for its Fiscal Years (FYs) 2007, 2008 and 2009 (WP-07 Rates).[2] These motions arise out of a particular and discrete ratemaking decision made by BPA in its WP-07 Rates proceedings as a result of its dealings with the DSIs.

---

[2] As discussed below, BPA conducted both an original WP-07 Rates proceeding and a supplemental proceeding (WP-07S) made necessary so BPA could respond to Ninth Circuit decisions issued before the WP-07 rulings became final. In these motions, we refer to the "WP-07 Rates proceedings" as including both ratemaking proceedings.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 3

Prior to the WP-07 Rates proceedings, BPA made decisions to provide subsidies to the DSIs. The subsidies took the form of cash payments to two aluminum smelters, Alcoa Inc. (Alcoa) and Columbia Falls Aluminum Company (CFAC), and below-cost power sales to a third DSI.[3] These decisions were implemented in contracts entered by BPA with each of the DSIs. These BPA decisions and DSI contracts were challenged in this Court by certain of the PF Customers, resulting in the *PNGC I* decision.

As a consequence of BPA's decision to provide subsidies to the DSIs and to enter the implementing contracts, in its WP-07 Rates proceedings BPA had to address how it would recover the costs of those subsidies. In those proceedings, BPA decided to include in its revenue requirement the forecasted costs of the cash subsidies to be paid to the two aluminum DSIs.[4] Specifically, BPA decided to charge the PF Customers in *their* rates costs that BPA incurred to provide subsidies *to the DSIs*. BPA did this over the objection of its PF Customers at the time.

---

[3] BPA entered into a contract for below-cost power sales to Port Townsend Paper Company (PT Paper).

[4] During the same period, BPA also planned to collect an additional amount in its rates to cover its forecasted losses on below-cost sales to PT Paper. These losses were far less than the cash subsidies paid to Alcoa and CFAC.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 4

Over the full three year period, those forecasted costs totaled more than $173 million.[5]  The actual amounts collected by BPA in its PF Rates for the recovery of DSI subsidy costs during the period addressed by *PNGC I* (October 1, 2006 through November 30, 2008) are unknown to the PF Customers but can be calculated by BPA on remand.  It is probable, however, that the amounts actually collected by BPA in its PF Rates during that period are a very large portion of the forecasted costs for the same period.

BPA's WP-07 Rates became ripe for review in this Court pursuant to the Northwest Power Act, Section 9(e)(4)(D), 16 U.S.C. § 839f(e)(4)(D), on July 16, 2009, when the Federal Energy Regulatory Commission (FERC) issued its Order Confirming and Approving Rates on a Final Basis.  *See* 128 FERC ¶ 61,058 (2009)

---

[5] Attached as Exhibit 1 is a copy of the Slice Product Costing and True-Up Table provided after the close of FY 2009 by BPA to its Slice Product customers, including PNGC and certain members of PPC.  At line 20 (highlighted for convenience), the table shows BPA's forecasted costs of payments to BPA's aluminum smelter DSIs for FY 2007, 2008 and 2009, together with the actual amounts paid out by BPA to these DSI customers.  The forecasted total of those costs to be collected in rates is $172,999,000.  This figure does not include the costs of below-cost power sales to PT Paper.  The cash subsidies actually paid to the aluminum smelter DSIs over the full three year period total $140,040,000.  Issues pertaining to the recovery from the aluminum DSIs of the illegal payments by BPA are supposed to be addressed by BPA on remand of *PNGC I*.  The amount that BPA is able to recover from the aluminum DSIs as a result of that remand does not, however, define or limit BPA's obligation to refund the *forecasted* costs of the DSI subsidies that were *actually* collected by BPA from its customers that paid the PF rates.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 5

(approving WP-07 Rates pursuant to FERC's limited jurisdiction over BPA rates); *Central Lincoln Peoples' Util. Dist. v. Johnson*, 735 F.2d 1101, 1109 (9th Cir. 1984) (addressing ripeness of review of BPA rates).  The PF Customers who are petitioners in these cases all filed petitions for review in a timely manner, *see* 16 U.S.C. § 839f(e)(5) (requiring filing within 90 days), resulting in these consolidated cases before the Court.

## ARGUMENT

The relief sought by the PF Customers in these motions (severance of this issue, and summary review and remand with instructions to calculate and pay the refund amounts due) is appropriate and may be granted expeditiously without adversely affecting the review and disposition of the many other issues raised by the PF Customers and others in these consolidated cases.  Severance is appropriate because the Court's disposition of this issue does not depend on the Court's decisions on the other numerous issues in this proceeding.  And, conversely, the Court's disposition of the other issues in this proceeding is not affected by the Court's decision on these motions because the *PNGC I* ruling controls in both circumstances.  Summary disposition is appropriate on the grounds that (a) the intervening decision of the Court in *PNGC I* requires reversal in these consolidated cases of BPA's decision to include DSI subsidy costs in the rates paid by the PF

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 6

Customers, or, in the alternative, (b) in light of the intervening *PNGC I* decision, it is manifest that the question on which the Court's decision on this issue depends is so insubstantial as not to justify further proceedings. *See* Cir. R. 3-6.

In short, the PF Customers ask the Court to determine, through summary disposition, that BPA is required to refund to its preference customers the costs of unlawful subsidies that were, over their timely objections, included in the PF rates. To rule otherwise would conflict with the Court's precedent, allow BPA to continue to avoid any consequences for its unlawful actions, and deny the preference customers of a timely remedy for harm they have already proven.

## I.     THE ISSUE OF THE LAWFULNESS OF BPA's TREATMENT OF DSI SUBSIDY COSTS IN ITS WP-07 RATES WAS PRESERVED FOR JUDICIAL REVIEW.

BPA opened its WP-07 Rates proceedings with the publication of a Federal Register notice on November 8, 2005. *See* 2007 Wholesale Power Rate Adjustment Proceeding; Public Hearings, and Opportunities for Public Review and Comment, 70 F.R. 67685 (2005) (FR Notice). A copy of the FR Notice is attached as Exhibit 2. The FR Notice contained limitations on the scope of the WP-07 Rates proceeding. Relevant to these motions was the following scope limitation:

> 3. DSI Service
>
> The DSI Service decisions finalized and established the manner and method by which BPA would provide service and benefits to its DSI customers. The

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 7

decisions in that ROD resolved the method and level of service to be provided DSIs in the FY 2007–2011 period.  Pursuant to § 1010.3(f) of BPA Hearing Procedures, the Administrator directs the Hearing Officer to exclude from the record any material attempted to be submitted or arguments attempted to be made in the hearing which seek to in any way revisit the appropriateness or reasonableness of BPA's decisions made in the DSI ROD.

70 F.R. at 67689.

This scope limitation prospectively rendered futile and unnecessary any attempt by PF Customers to litigate and preserve in the WP-07 Rates proceeding record the issue of whether it was lawful for BPA to include in the rates charged to the PF customers the costs of the subsidies BPA would pay to the DSIs.

Notwithstanding the scope limitation, certain PF Customers, including PNGC and certain PPC members, did challenge in the original WP-07 Rates proceeding the lawfulness of including the DSI subsidy costs in the PF rates.  At the conclusion of the proceeding, BPA issued the 2007 Wholesale Power Rate Adjustment Proceeding (WP-07) Administrator's Final Record of Decision, WP-07-A-02 (July 17, 2006) (WP-07 ROD), R.A.R. 52570 *et seq.*[6]  A copy of the WP-07 ROD is attached as Exhibit 3.  The WP-07 ROD refers to arguments made by PNGC:

---

[6] BPA filed its Index to the [WP-07 Rates] Administrative Record in these consolidated cases on or about January 20, 2010.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 8

> PNGC argues that "BPA has no obligation or discretion to incur costs for DSI 'service benefits,' and inclusion of such costs in the rates of its preference and priority customers is unlawful." (PNGC Br., WP-07-M-70 at 11.) PNGC also notes that the legal arguments supporting its point of view have previously been made in the context of two separate cases being argued before the Ninth Circuit Court of Appeals. (*Id.* at 10.) In particular, PNGC notes that, in one of the cases, PNGC is directly challenging the current proposal to provide up to $59 million in monetary benefits to the DSIs. (*Id.* at 10-11.) PNGC notes finally that its purpose in submitting DSI testimony in this proceeding "is to preserve the issue and reserve all available arguments for possible review by the Ninth Circuit pursuant to Section 9(e) of the Northwest Power Act." (Id. at 11-12.)

WP-07 ROD, at p. 13-2; R.A.R. 52770.

The BPA Administrator stated his decision in response to PNGC's (and others') arguments as follows:

> The Administrator will not consider the arguments made by PNGC and Alcoa in this proceeding. DSI service benefits were established in separate proceedings, and their testimony adds nothing new or relevant to the subject.

WP-07 ROD, at p. 13-3; R.A.R. 52771.

At the close of the original WP-07 Rates proceeding, BPA submitted the record to the FERC for review. While the FERC's review was pending, the Ninth Circuit decided *Golden Northwest Aluminum, Inc., et al. v. Bonneville Power Administration,* 501 F.3d 1037 (9th Cir. 2007) (*Golden Northwest*), and *Portland General Electric Company, et al. v. Bonneville Power Administration,* 501 F.3d 1009 (9th Cir. 2007) (*Portland General*). In light of these opinions, BPA determined that it was required to revisit certain of its rate determinations. BPA

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 9

therefore asked the FERC to remand the WP-07 Rates proceeding and, on February 8, 2008, commenced a supplemental WP-07 Rates proceeding (WP-07S) by issuing another Federal Register Notice. *See* 2007 Supplemental Wholesale Power Rate Adjustment Proceeding, Public Hearings, and Opportunities for Public Review and Comment, 73 F.R. 7539 (2008) (Supp FR Notice). A copy of the supplemental Federal Register notice is attached as Exhibit 4.

In this supplemental rates proceeding, the Federal Register notice once again contained a scope limitation pertaining to BPA's decisions to provide "service benefits" to its DSI customers. It stated:

> 3. Service to Direct Service Industries (DSIs)
>
> The Near-Term Policy established parameters for service to the DSIs that were further addressed in Bonneville Power Administration's Service to DSI Customers for Fiscal Years 2007–2011, Administrator's Record of Decision (DSI ROD) (June 30, 2005), and Supplement to Administrator's Record of Decision on Bonneville Power Administration's Service to Direct Service Industrial (DSI) Customers for Fiscal Years 2007–2011, Administrator's Record of Decision (May 31, 2006), (together the "DSI RODs").
>
> In the DSI RODs, BPA determined to offer to aluminum company DSIs power sales contracts for an aggregate 560 aMW of benefits at a capped cost of $59 million. In addition, BPA offered a 17 aMW surplus firm power sales contract for Port Townsend Paper Company through the local public utility under the FPS rate (or the Industrial Firm Power (IP) rate, if viable) at a price approximately equivalent to, but in no case less than, its lowest-cost PF rate.
>
> BPA decided to allocate a share of the 560 aMW of service benefits to each DSI aluminum company for purposes of making an initial offer of service.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 10

> Because of the financial risks inherent in providing actual power and in order to meet the known and capped cost prerequisite, BPA determined that the delivery mechanism would be to monetize the value of the below-market power sales to provide service benefits through cash payments.

73 F.R., at 7542.

In the supplemental WP-07 Rates proceeding, PNGC made two kinds of arguments: (1) that BPA could not lawfully allocate to the rates paid by PF Customers the costs of DSI "service benefits" subsidies, including specifically that a finding by this Court in *PNGC I* that the DSI contracts for the provision of such subsidies were found unlawful would mean that those costs could not be charged to PF Customers in their rates, and (2) that BPA had arbitrarily, capriciously and unlawfully reduced the IP rate following the Court's decision in *Golden Northwest* and *Portland General*. On motion filed by BPA, the WP-07S hearing officer issued an order striking the portions of PNGC's brief arguing that the DSI subsidy costs could not be included in the PF rates. The hearing officer's order, WP-07-HOO-94, R.A.R. 92605-92608, issued June 16, 2008, is attached as Exhibit 5. Pursuant to that order, PNGC filed an Offer of Proof, WP-07-E-PN-16, R.A.R. 82066 *et seq.*, an abbreviated copy of which is attached as Exhibit 6.[7]

---

[7] The Offer of Proof is filed with these motions in order to demonstrate preservation of the issue in WP-07S. The Offer of Proof contained 15 attachments and was voluminous. For brevity, we have omitted entirely Attachments 2-15 (R.A.R. 82222-86484), which reflected evidence PNGC sought to introduce in

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 11

On September 22, 2008, the BPA Administrator issued the 2007 Supplemental Wholesale Power Rate Case Administrator's Final Record of Decision, WP-07-A-05 (2008), R.A.R. 62311 *et seq*. (WP-07S ROD). A copy of the WP-07S ROD is attached as Exhibit 7. In the WP-07S ROD, the Administrator ignored PNGC's Offer of Proof and did not address PNGC's arguments concerning inclusion of the costs of DSI subsidies in the rates charged to PF customers. The Administrator addressed other arguments made by PNGC concerning the large reduction in the IP rate (which are not addressed by these motions, and are reserved for briefing on the merits). WP-07S ROD, at pp. 381-391, R.A.R. 62707-62717.

Plainly, the issue of whether it is lawful for BPA to include in the rates charged to PF Customers the costs of DSI subsidies that this Court has found unlawful was preserved in both phases of the WP-07 Rates proceedings. Thus, this issue is properly before the Court in this proceeding.

---

WP-07S, but which is not necessary to a decision on these motions. Attachment 1 to the Offer of Proof, PNGC's Opening Brief in WP-07S (R.A.R. 82085 *et seq.*), is retained but that brief's 7 attachments (R.A.R. 82101-82221) are also omitted for brevity and because they are unnecessary to a decision on these motions.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 12

## II. THIS COURT FOUND THAT BPA's SUBSIDIES TO THE DSIs WERE UNLAWFUL.

In 2005 (before the WP-07 Rates proceedings started) and 2006, BPA announced decisions to enter contracts with its DSI customers for the period of FYs 2007-11. *See* Bonneville Power Administration's Service to Direct Service Industrial (DSI) Customers for Fiscal Years 2007-2011 Administrator's Record of Decision (June 30, 2005) ("DSI Service ROD"), *published at* http://www.bpa.gov/power/pl/regionaldialogue/06-2005_dsi_rod.pdf; *and* Supplement to Administrator's Record of Decision on Bonneville Power Administration's Service to Direct Service Industrial (DSI) Customers for Fiscal Years 2007-2011 (May 31, 2006) ("Supplemental ROD"), *published at* http://www.bpa.gov/power/pl/regionaldialogue/05-31-2006_dsi_rod_supplement.pdf. In the DSI Service ROD and Supplemental ROD, BPA announced that it would not sell power to its aluminum DSI customers during FYs 2007-09, but instead would "monetize" the benefits of below-cost sales and make cash payments to those customers. For FYs 2010-11, BPA retained a unilateral option either to sell power or to continue to make cash payments instead of selling power below cost.[8]

---

[8] BPA also announced it would make physical sales of power, at below-cost prices, to PT Paper throughout FYs 2007-2011.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 13

In 2006, BPA entered contracts implementing those decisions. *PNGC I*, 550 F.3d at 852-53. Certain PF Customers, including PNGC, and industrial customers served by PF Customers filed suits in this Court seeking review of BPA's final decisions (the RODs) and actions implementing them (the contracts). *Id.* The Court granted review and found unlawful BPA's cash subsidy payments to the aluminum DSIs. The Court stated:

> We therefore … hold that BPA's decision to monetize the aluminum DSI contracts amounts to an impermissible subsidy of those companies' operations. Because, by its own admission, BPA is not obligated to sell power to the DSIs, its decision to sell power voluntarily at a rate below what it is statutorily required to offer (i.e., the IP rate) and below what it could receive on the open market violates its statutory mandate to act in accordance with "sound business principles." *See* [16 U.S.C.] § 838g.

*PNGC I*, 550 F.3d at 873-74.[9]

Although the Court found that the DSI subsidies were unlawful, because BPA's WP-07 Rates were not then ripe for review, it has been necessary for the PF Customers to await judicial review of BPA's WP-07 Rates to seek a remedy for being charged by BPA for the costs of the illegal DSI subsidies. The PF Customers now seek a remedy through these motions.

---

[9] The Court also applied the mandate to invalidate the PT Paper contract. *PNGC I*, 550 F.3d at 879.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 14

## III.   SUMMARY DISPOSITION IS APPROPRIATE.

In these motions, the PF Customers seek relief pursuant to Circuit Rule 3-6,

which, in relevant part, provides:

> At any time prior to the completion of briefing in a civil appeal if the court determines:

> (a)   that clear error or an intervening court decision or recent legislation requires reversal or vacation of the judgment or order appealed from or a remand for additional proceedings; or

> (b)   that it is manifest that the questions on which the decision in the appeal depends are so insubstantial as not to justify further proceedings the court may, after affording the parties an opportunity to show cause, issue an appropriate dispositive order.

Rule 3-6 is plainly applicable to the issue in this case described in these motions.

### A.   The Court Has Answered the Questions That Are Dispositive On This Issue.

Rule 3-6(a) applies because the intervening Ninth Circuit decision in *PNGC*

*I*, now a final and non-appealable judgment, plainly held that the DSI subsidies

provided by BPA in FYs 2007 and 2008, and during FY 2009 through November

30, 2009 were unlawful and invalid.  This decision directly controls the outcome of

judicial review of BPA's decision to include these unlawful costs in the rates BPA

charged to PF Customers over their timely protest.  At the very least, it shows that

BPA erred in assuming, in the WP-07 Rates proceedings, that it was entitled to

incur those costs and pass them on to its preference customers.  The Court should,

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 15

therefore, order a remand for BPA to address the improprieties in its WP-07 Rates proceedings on this issue.

In the alternative, Rule 3-6(b) is also plainly applicable. The questions on which the Court's decision on review depends, the lawfulness of BPA charging the PF Customers in their rates the costs of the illegal DSI subsidies, are so insubstantial in light of the *PNGC I* decision as not to justify further proceedings. No purpose would be served by delaying review until after briefing and argument on the merits.

The Court has previously applied Rule 3-6 in agency cases.[10] Historically, the Court has been cautious in granting a motion for summary disposition. *See, United States v. Hooton,* 693 F.2d 857 (9th Cir. 1982). However, the *Hooton* Court also said, "[w]here the outcome of a case is beyond dispute, a motion for summary disposition is of obvious benefit to all concerned." *Id.,* at 858. The circumstances presented to the Court on the PF Customers' motions fall squarely within the purpose of Rule 3-6 because the outcome of the case (*i.e.* that a remand is

---

[10] *See, e.g., Ocampo v. Mukasey,* 260 Fed. Appx. 956; 2007 U.S. App. LEXIS 29990 (9th Cir. 2007) (petition for review summarily dismissed); *Arriaga v. Gonzales,* 247 Fed. Appx. 48; 2007 U.S. App. LEXIS 18400 (9th Cir. 2007) (petition for review summarily dismissed).

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 16

necessary, and that BPA will be required to calculate and pay, or credit, a refund[11] to its preference customers) is beyond dispute. The intervening decision in *PNGC I* was rendered concerning the very BPA decisions and actions which resulted in the agency illegally incurring costs for subsidies to DSI customers and passing on those costs to the PF Customers in their rates. No credible argument can be made that the *PNGC I* decision is inapplicable to BPA's decision to charge its preference customers the costs of DSI subsidies, or that it does not control the outcome of the Court's review of this issue.

### B. The Court Should Instruct BPA To Calculate and Refund To Its PF Customers All Costs of the Unlawful Subsidies Identified In *PNGC I* and Collected in the PF Rates.

This Court has repeatedly held that it has the authority to order BPA to pay refunds where BPA's rates are set based on unlawful actions. In *Atlantic Richfield Co. v. BPA,* 818 F.2d 701 (9th Cir. 1987), this Court reviewed a challenge by certain DSI customers to a charge levied against them by BPA. The Court denied their challenge, but clarified that "[t]he . . . petitions seek repayment of allegedly unlawful charges imposed by the 1983 rates. *If successful, the petitioners can receive a refund in the amount of the overpayments*." *Id*. at 705 (emphasis added). Similarly, in *Pub. Util. Comm'r of Oregon v. Bonneville Power Admin*., 767 F.2d

---

[11] The Court's power to order a refund of unlawfully incurred costs included in rates is discussed in the next section.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 17

622 (9th Cir. 1985), this Court reviewed a challenge by certain investor-owned utilities and state regulatory commissions in which it was argued that BPA violated their due process rights in setting its rates, and that a methodology that affected BPA's rates was unlawful. This Court held that the challenges were not ripe for review at the time. It explained, however, that:

> [D]elaying review . . . will not prevent petitioners from obtaining full and effective relief. If petitioners prevail, the entire [] methodology proceeding is subject to vacation if necessary, and *the court can order refunds for any over-collections by BPA during the period the new methodology was in effect. This court may also make a retroactive adjustment of rates* for the purpose of determining the statutory baseline.

*Id.* at 630-31 (citations omitted) (emphasis added).

Finally, in *Public Utility Commission of California v. Federal Energy Regulatory Commission,* 814 F. 2d 560 (9th Cir. 1987), this Court reviewed challenges by certain utilities and their regulators that BPA had established a rate without adhering to required procedures. Because the challenges were made before final FERC confirmation of the rates, the Court again denied them as unripe. However, in finding that petitioners would not be harmed by the delay in review, the Court once again affirmed that it can order BPA to issue refunds for unlawfully set rates. *See id.* at 562 (citing *Pub. Util. Comm'r of Oregon v. Bonneville Power Admin.*, 767 F.2d 622 (9th Cir. 1985)).

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 18

These cases establish that where petitioners challenge BPA's rates as being set based on unlawful costs, charges, or methodologies, and where those petitioners ultimately prevail in those challenges, the Court will order BPA to calculate and make appropriate refunds. In this case, there can be no question that the issue identified by these PF Customers is ripe for review because this case was timely filed after final FERC confirmation of BPA's rates.

In these circumstances, where relief under Circuit Rule 3-6 is clearly warranted, the Court should not hesitate to grant summary review of the issue raised by these motions and remand this aspect of BPA's WP-07 ratemaking to the agency with instructions to calculate and refund the amounts unlawfully charged to the customers who paid the charges.[12] Doing so will streamline review of the many remaining issues to be brought before the Court by disposing of this issue without requiring that it be addressed in the lengthy briefs that will be filed on other issues. Doing so will also ensure that preference customers' remedy will be provided in an efficient and timely manner.

---

[12] More than a year after the *PNGC I* decision, BPA has yet to act on the Court's remand, either by initiating efforts to recover from the aluminum DSIs the illegal payments they received or, voluntarily and without a Court order such as sought here, refund the costs illegally charged to PF Customers. On remand, BPA will have to consider the proper source of funds and the mechanism to be used to provide the refunds.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 19

Moreover, granting the motions will not result in piecemeal review. For the time period addressed by *PNGC I*, this issue can only arise once, and because the outcome on review is controlled by a final judgment on an intervening decision of the Court, it cannot change whether review is granted pursuant to Circuit Rule 3-6 or after briefing and oral argument on the merits. No purpose will be served by delaying the grant of the appropriate remedy, but granting the remedy sought by PF Customers will allow BPA to proceed with a refund much sooner than it could if this issue is addressed together with all the other issues in briefing on the merits. [13]

## **CONCLUSION**

For these reasons, the PF Customers respectfully request that the Court sever the issue of the lawfulness of BPA's charging the costs of DSI subsidies already found unlawful by the Court to the PF Customers in their rates during FYs 2007, 2008 and 2009 (through November 30, 2008), grant summary review of this issue pursuant to Circuit Rule 3-6, and remand this issue to BPA with instructions to calculate and refund those costs to the PF Customers.

---

[13] The parties to these consolidated cases have agreed to pursue mediation of certain issues. The mediation is scheduled to take place during April and May, 2010. Briefing on the merits in these cases will not commence until after the mediation, and the briefing schedule is currently suspended. The issue addressed by these motions, a refund of the DSI subsidy costs found unlawful in *PNGC I*, is *not* part of the mediation.

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 20

Respectfully submitted this 2nd day of February, 2010.

*s/ Mark R. Thompson*
Mark R. Thompson
Public Power Council
825 NE Multnomah Street, Ste. 1225
Portland, Oregon 97232
Tel: 503.595.9779
Fax: 503.239.5959
E-mail: mthompson@ppcpdx.org
Attorney for Public Power Council

R. ERICK JOHNSON, P.C.

By: *s/ R. Erick Johnson*
R. Erick Johnson
5285 SW Meadows Rd, Ste 230
Lake Oswego, OR 97035
Ph: (503) 684.9658
Fax: (503) 968.6159
ejohnson@rejpc.com
Attorney for PNGC

SUSAN K. ACKERMAN

By: *s/ Susan K. Ackerman*
Susan K. Ackerman
621 SW Morrison, Ste 700
Portland, Oregon 97205
Ph: (503) 297-2392
Fax: (503) 242-9001
susan@ska-law.com
Attorney for NRU

PETITIONERS' MOTIONS TO SEVER
AND FOR SUMMARY DISPOSITION
Page 21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2010, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


_s/ R. Erick Johnson_
R. Erick Johnson
Attorney for PNGC

CERTIFICATE OF SERVICE